# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2643

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Northern |
| Ingmar Eloy Gillon, | * | District of Iowa. |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 13, 2003

Filed:  October 31, 2003 (corrected 11/10/03)

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Ingmar Gillon was convicted in the district court[1] of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and of possession of cocaine base (crack) with intent to deliver while on pretrial release, *see* 21 U.S.C. § 841(a)(1), 18 U.S.C. § 3147(1).  He was sentenced to 360 months imprisonment.  Mr. Gillon appeals, contending that the indictment was defective, that his motion to suppress should have been granted, and that he received ineffective assistance of counsel.  We affirm.

_____

[1]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation in the Northern District of Iowa.

I.

Mr. Gillon urges us to hold that his indictment was defective because it did not specifically allege the amount of drugs involved in his offense or that he committed the offense while on pretrial release. We conclude that Mr. Gillon's argument is without merit.

It is true that the notice and jury trial guarantees of the sixth amendment and the due process clause of the fifth amendment and fourteenth amendments require that any fact (other than a prior conviction) that increases the penalty for a crime beyond its statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, *see Apprendi v. New Jersey*, 530 U.S. 466, 476, 490 (2000); *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999), and "[i]n federal prosecutions, such facts must also be charged in the indictment," *United States v. Cotton*, 535 U.S. 625, 627 (2002). But since Mr. Gillon did not raise this point below, we review it for plain error only. *See id.* at 629, 631. Under this rule we may correct a forfeited error that is plain and affects a defendant's substantial rights only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original) (internal quotations omitted); *see also Cotton*, 535 U.S. at 631-32; Fed. R. Crim. P. 52(b).

We address first Mr. Gillon's contention that the indictment was defective because it did not allege that he committed the drug offense while on pretrial release. Under § 3147(1), "a person convicted of [a felony] committed while [on pretrial release] shall be sentenced, in addition to the sentence prescribed for the offense to ... a term of imprisonment of not more than ten years." To calculate Mr. Gillon's sentence under the United States Sentencing Guidelines, the district court applied U.S.S.G. § 2J1.7, which increases the offense level by three "[i]f an enhancement under 18 U.S.C. § 3147 applies." Prior to the Supreme Court's rulings in *Apprendi* and *Cotton*, we held that § 3147 is a sentence enhancement, which does not "creat[e] a separate offense that must be separately charged by the grand jury and found by the

jury beyond a reasonable doubt." *See United States v. Feldhacker*, 849 F.2d 293, 299 (8th Cir. 1988). But in *Apprendi*, 530 U.S. at 494, the Court characterized a distinction between "elements" and "sentencing factors" as "constitutionally novel and elusive," stating that "the relevant inquiry is one not of form, but of effect--does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *See also id.* at n.19.

Even if we assume without deciding that under current law it was error to omit the factual basis for the enhancement from the indictment, however, we conclude that Mr. Gillon is not entitled to plain error relief. We note that although the indictment omitted factual allegations supporting the enhancement, it cited to the statute that increases the penalty if a crime is committed while on release, *see* 18 U.S.C. § 3147(1). And Mr. Gillon's counsel acknowledged having notice of the enhancement by stating at the time that the court announced its judgment that it had "always been [her] understanding that the defendant was properly charged with possession with intent to deliver while on pretrial release." Also, Mr. Gillon was not denied a jury determination on the issue: He requested a bench trial, and after the government presented uncontroverted evidence to support the enhancement, the trial court found beyond a reasonable doubt that Mr. Gillon committed the drug offense while on pretrial release.

We are aware of our holding that a defendant's right to be tried on charges brought by a grand jury may be violated if a federal indictment does not specifically allege an "essential element" of an offense. *See United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988). But assuming that the factual basis for a § 3147 enhancement should have been alleged in the indictment, we think that a grand jury if presented with the evidence offered by the government at trial would have found that Mr. Gillon was on pretrial release when he committed the drug crime. *Cf. Cotton*, 535 U.S. at 633. For all of the reasons stated, we conclude that the absence of a pretrial-release allegation in Mr. Gillon's indictment did not "seriously affect the

fairness, integrity, or public reputation of judicial proceedings," *see id.* at 631-32, and thus cannot be a basis for plain error relief.

Nor is Mr. Gillon entitled to plain error relief because the drug quantity was not alleged in the indictment and not found by the fact-finder beyond a reasonable doubt. While the error here is plain, because the district court sentenced Mr. Gillon to 320 months on the drug charge itself (without the § 3147 enhancement), and the maximum penalty for possession with intent to distribute an unspecified amount of crack is 240 months, *see* 21 U.S.C. § 841(b)(1)(C), the error did not affect his substantial rights because Mr. Gillon would have received the same total sentence of 360 months anyway. *See United States v. Diaz*, 296 F.3d 680, 684-85 (8th Cir. 2002) (en banc), *cert. denied*, 573 U.S. 940 & 1095 (2002).

The district court found, with support in the record, that the drug quantities involved in Mr. Gillon's offense (combined with other sentencing considerations, including the enhancement based on § 3147, *see* U.S.S.G. § 2J1.7) qualified him for a guidelines sentencing range between 360 months and life. Since Mr. Gillon's "total punishment" of 360 months exceeded the 240-month maximum for a conviction for possession with intent to distribute crack as charged in the indictment, under U.S.S.G. § 5G1.2(d) his sentence on the firearms conviction would have had to have been made to run consecutively to his sentence on the drug conviction to the extent necessary to make the sentence conform to the "total punishment" that the guidelines require. *See Diaz*, 296 F.3d at 684-85. Because the gun charge carries a maximum sentence of ten years (120 months), *see* 18 U.S.C. § 924(a)(2) (and even without considering the effect of the ten-year maximum enhancement for committing a felony while on release, *see* 18 U.S.C. § 3147(1)), it is apparent that the district court would have been required to sentence Mr. Gillon to 360 months in any event.

II.

We also uphold the district court's denial of Mr. Gillon's motion to suppress. We review that court's factual findings in support of its ruling on the suppression motion for clear error and its ultimate application of the law to the facts *de novo*. *United States v. Tyler*, 238 F.3d 1036, 1038 (8th Cir. 2001).

After a hearing on the motion to suppress, the district court[2] found that two police officers, who were conducting surveillance of a possible "crack house," saw Mr. Gillon leave the building and drive away. Based on prior encounters with him, the officers suspected that Mr. Gillon did not have a valid driver's license, and a dispatcher whom they contacted confirmed their suspicions. Then the officers, who were on bicycles, radioed an officer in a patrol car, who stopped Mr. Gillon. By the time the original officers, along with two others, arrived at the scene of the stop, Mr. Gillon was seated in the back of the patrol car.

The district court credited the officers' testimony that while Mr. Gillon was in the patrol car, he was asked about whether the vehicle he had been driving was insured; he admitted that it was not and that there were no insurance papers in the car. He also acknowledged when asked that he had a previous citation for driving without insurance and had paid a fine. The officers then decided that the vehicle should be impounded. The district court found that two officers went over to the vehicle that had been driven by Mr. Gillon, looked in the window, and observed what they thought was a controlled substance in "baggies" on the floorboard of the rear passenger area of the car. These officers then called over two of the others, and the district court found that at that point the four officers "reasonably believed that the

_____

[2] The Honorable Michael J. Melloy, then United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Eighth Circuit Court of Appeals, adopting the report and recommendation of The Honorable John A. Jarvey, Chief Magistrate Judge, United States District Court for the Northern District of Iowa. See 28 U.S.C. § 636(b)(1)(B).

baggies contained crack cocaine." The police then seized the small plastic bags, and Mr. Gillon was placed under arrest. According to the district court, after the bags were seized, the "police continued to impound the car pursuant to [Mr. Gillon's] second citation for failing to carry proof of insurance."

Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). We believe that Mr. Gillon was properly stopped on a public road for a traffic violation and thus the police were lawfully in close proximity to the vehicle, and that once the officers viewed what appeared to be bags containing crack cocaine they had a right of access to the passenger compartment of the car, *see United States v. Beatty*, 170 F.3d 811, 814 (8th Cir. 1999). Although Mr. Gillon does not contest the incriminating appearance of the bags, he argues that the district court clearly erred in finding that they were in plain view when he was stopped. He maintains that police photographs of the back seat of the car show the bags in different locations, thereby supporting a finding that the police moved them into plain view. Mr. Gillon also points out that although the officers testified that he admitted to driving an uninsured vehicle and to receiving a previous citation for an insurance violation, these admissions were missing from most of their reports, and one report that included the admissions was provided only after Mr. Gillon filed his suppression motion.

We believe that Mr. Gillon's argument boils down to a contention that his story is more believable than that of the police officers. Although Mr. Gillon offers several reasons for rejecting the officers' testimony, the district court found their testimony to be credible, and that credibility finding is "virtually unreviewable on appeal," *United States v. Moore*, 212 F.3d 441, 446 (8th Cir. 2000) (internal quotations omitted). We have viewed the photographs of the bags in the vehicle, and we conclude that they do not demonstrate that the district court's findings are clearly

wrong. Where, as here, the district court believes one of two permissible versions of the events, its findings cannot be clearly erroneous. *See United States v. Santee Sioux Tribe of Neb.*, 324 F.3d 607, 610 (8th Cir. 2000). Also, although Mr. Gillon contends that in order for the plain-view doctrine to apply the police cannot have been actually looking for drugs when they discovered the bags, the Supreme Court has rejected inadvertence as a requirement for the plain-view doctrine. *See Horton v. California*, 496 U.S. 128, 130, 138-140 (1990); *see also United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996); *United States v. Hughes*, 940 F.2d 1125, 1127 (8th Cir. 1991), *cert. denied*, 502 U.S. 896 (1991).

Mr. Gillon also argues that the plain-view doctrine has no application here because when the police discovered the drugs they had already decided to impound the vehicle, and that the circumstances did not support the impoundment. We reject this argument because the officers' activity in looking in the window of the car was lawful in any case. Even if we assume, however, that the impoundment must have been lawful in order to validate the seizure, Mr. Gillon cannot prevail.

Based on the officers' testimony, the district court was entitled to find, as it did, that Mr. Gillon admitted that the vehicle he was driving was uninsured and that he had received a prior citation for driving without insurance and paid a fine. Under Iowa law, an individual is prohibited from operating a vehicle that does not have "financial liability coverage," *see* Iowa Code § 321.20B.1. When, as here, the driver who violates § 321.20B.1 "has been previously ... cited for a violation" of the statute, the police may "[i]ssue a citation ... and impound the motor vehicle," *see* Iowa Code § 321.20B.4.a(2), 4.a(4)(a). Also, as we have said, the police had determined that Mr. Gillon did not have a valid driver's license, and therefore he was not authorized to remove the vehicle from the public road. *Cf.* Iowa Code § 321.20B.4.a(3). Although Mr. Gillon argues that the citation he received on the day of the stop was invalid because it was not made under oath, we believe that the officers were nonetheless permitted to impound the vehicle since Mr. Gillon's admissions gave

-7-

them probable cause to believe that the vehicle did not have "financial liability coverage" and that Mr. Gillon had a prior citation. The police may perform an inventory search of a vehicle that has been impounded without violating the fourth amendment, *United States v. Rowland*, 341 F.3d 774, 779 (8th Cir. 2003), and Mr. Gillon does not challenge the manner in which the inventory was completed. We therefore conclude that the impoundment provided an alternative basis for seizing the bags of drugs, and that the district court did not err in denying Mr. Gillon's motion to suppress.

## III.

In addition, Mr. Gillon maintains for several reasons that his trial counsel was ineffective, claims that we ordinarily do not address on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th cir. 2003). Here we decline to review Mr. Gillon's ineffective-assistance claims because the district court did not develop a record on them, and we do not think that requiring the defendant to seek review in a motion to vacate under 28 U.S.C. § 2255 will result in a "plain miscarriage of justice." *See United States v. Santana*, 150 F.3d 860, 863 (8th Cir. 1998). We also do not address a sentencing argument that Mr. Gillon raised for the first time in a document that he filed after his reply brief. *Cf. United States v. Deering*, 179 F.3d 592, 597 (8th Cir.1999), *cert. denied*, 528 U.S. 945 (1999).

## IV.

Accordingly, we affirm the judgment of the district court.

_____